**DECLARATION OF RYAN NELSON IN SUPPORT OF THE SPECIAL
SITUATION FUNDS' MOTION FOR APPOINTMENT OF LEAD PLAINTIFF,
APPROVAL OF SELECTION OF LEAD COUNSEL, AND
CONSOLIDATION OF ALL RELATED MATTERS**

I, Ryan Nelson, pursuant to 28 U.S.C. § 1746 and on behalf of Special Situations Fund III QP, L.P. ("Fund III"), Special Situations Cayman Fund, L.P. ("Cayman Fund"), and Special Situations Private Equity Fund, L.P. ("PE Fund") (collectively, "SSF" or the "Funds"), declare as follows:

1. I respectfully submit this Declaration in support of the Funds' motion for appointment of Lead Plaintiff in the securities class action against Chembio Diagnostics, Inc. ("Chembio" or the "Company") and other defendants, including certain of Chembio's directors and officers, and its underwriters.

2. I am an equity analyst employed by the Funds, which are limited partnerships that are part of a larger family of Special Situations Funds having a place of business at 527 Madison Avenue, Suite 2600, New York, NY 10022. As investment funds, they receive money from a variety of investors, including pension plans, college and university endowments and individuals, and purchase equity securities in public companies, including the stock of companies with small-market and micro-market capitalization.

3. I was the principle analyst responsible for researching and evaluating the Funds' investment in Chembio common stock.

4. SSF initiated its investment in Chembio common stock on January 10, 2020. At that time, the Company's stock was trading at approximately $4/per share.

5. We believed the Company to be fairly or slightly undervalued by the market compared to its fundamentals, but with substantial upside if it could secure regulatory approval for certain of its diagnostic tests. Chembio is a point-of-care diagnostic company that focuses on infectious diseases. The Company markets a so-called "DPP" technology platform, which uses a drop of blood from the patient's fingertip to deliver immediate test results. Part of SSF's investment thesis was that if the Company received approval from the Food and Drug Administration ("FDA") for a DPP point-of-care test to detect antibodies to both HIV and Syphilis (the "HIV-Syphilis Assay"), the stock would appreciate.

6. On or about March 1, 2020, we learned that Chembio had not received approval from the FDA for its HIV-Syphilis Assay. At that point, we began selling the stock, at prices below $3.75. We increased our rate of sales over the course of March, in response to the market dislocation caused by the COVID-19 pandemic and our, and most other institutional asset managers', need for liquidity at that time.

7. We also sold shares of stock on April 1, April 13, and April 16, at prices between $7.12 and $12.23 (rounded). At that point in time, the HIV-Syhpilis Assay was no longer part of our investment thesis and we sold while the stock price was appreciating to offset prior losses on our early March trades. We also understood that Chembio's stock began appreciating in value after April 1, 2020, after the Company announced it had an effective and reliable DPP test for COVID-19 antibodies.

8. On April 16, 2020, we became aware that Chembio had received so-called Emergency Use Authorization ("EUA") for a DPP test for COVID-19 antibodies (the "COVID Test"). At that point in time, we stopped selling our shares of Chembio, on the belief that its stock price would continue to appreciate if the Covid test was as effective and reliable as the Company represented, and thus became widely utilized in response to the pandemic.

9. The stock price continued to appreciate after that point, reaching a high of $15.54 per share on April 24, 2020. We forewent selling our shares of the Company at that point in time, because we believed the Company's representations about the effectiveness of their COVID Test and thus expected its share price to continue to appreciate.

10. Indeed, we did not sell any shares of Chembio stock until June 17, 2020, after the FDA revealed that the COVID Test was not effective and that it had informed the Company of that fact (which the Company had not disclosed to its investors, including SSF).

11. On May, 7, 2020, SSF purchased 125,000 shares of common stock directly out of the Company's public offering, at $11.75/share, for a total investment of $1.468 million. We purchased these shares after reading Chembio's registration and prospectus, under which the Company's stock was offered. That registration and prospectus represented that Chembio's Covid Test was effective and reliable, and touted the FDA's EUA for that Test.

12. We held these shares through June 16, 2020, and also bought additional shares.

13. On June 16, 2020, the FDA disclosed that it was revoking the EUA for Chembio's COVID Test. According to the FDA, the performance of the Covid Test was "both inconsistent and lower than described in [Chembio's] original submission."

14. The Company informed the market of the revocation in a report filed with the SEC on Form 8-K on June 17, 2020.

15. In its revocation letter to Chembio, the FDA disclosed that it had first informed the Company of the poor test performance no later than April 29, 2020, more than a week before Chembio issued its registration statement and prospectus in connection with its public offering of shares.

16. The FDA's letter also disclosed that the Administration had informed the Company of the COVID Test's "high false negative rate" on that same date, and in addition that Chembio had disclosed to the FDA on that same date "additional data demonstrating poor performance."

17. The May 7, 2020 registration and prospectus did not disclose any of this information.

18. In response to this disclosure, Chembio's common stock fell from a closing price of $9.93 per share on June 16 to $3.89 on June 17, a decrease of more than 60%

19. We held every share we purchased in the offering (along with additional shares purchased on the open market) on the date of the disclosure of the FDA's letter and the revocation of the EUA, and sold our entire position on June 17, suffering substantial losses on each one of those shares.

20. We understand that another investor moving for appointment as lead plaintiff has argued that SSF "benefitted from" Chembio's fraud. This is categorically false. As outlined herein, SSF was misled by the Company's false and misleading statements about the Covid Test, invested millions of dollars in Chembio under false pretenses, and then suffered nearly $1 million in losses when the FDA revoked Chembio's EUA and disclosed the ineffectiveness and unreliability of the Covid Test.

21. To the extent we sold Chembio shares that we purchased before March 1, 2020, those shares were sold, in principal part, at a loss to our opening position. As I note above, these shares were sold to create liquidity for our investors in response to the COVID-19 pandemic and its devastating effect on the public equity markets. In addition, our original investment thesis for the Company was no longer applicable after the FDA did not approve the HIV-Syphilis Assay.

22. As we explained in connection with our opening motion, SSF is strongly motivated to recover the significant losses that we and other public Chembio investors suffered as a result of defendants' false and misleading statements and violations of the federal securities laws.

23. We understand that we are the only movant before the Court with the ability to pursue strict liability claims against Chembio, its directors, and its underwriters, and believe that these claims will greatly benefit other shareholders. This is consistent with the goal of our request to serve as lead plaintiff in this case: achieving the best possible recovery for defrauded public Chembio investors from all culpable parties, including Chembio's underwriters.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of September, 2020 at New York, New York.

Ryan Nelson

*Special Situations Fund III QP, L.P.,*
*Special Situations Cayman Fund, L.P., and*
*Special Situations Private Equity Fund, L.P.*

4