# EXHIBIT 1

Case 2:20-cv-02706-ARR-JMW    Document 55-1    Filed 01/06/21    Page 1 of 13 PageID #: 830

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
SERGEY CHERNYSH *on behalf of himself and all
others similarly situated*,

                         Plaintiff,

          -against-

CHEMBIO DIAGNOSTICS, INC., et al.,

                        Defendants.
-----------------------------------------------------------------------X
JAMES GOWEN *Individually and on Behalf of All
Others Similarly Situated,*

                         Plaintiff,

          -against-

CHEMBIO DIAGNOSTICS, INC., et al.,

                        Defendants.
-----------------------------------------------------------------------X
ANTHONY BAILEY *Individually and on Behalf of All
Others Similarly Situated,*

                         Plaintiff,

          -against-

CHEMBIO DIAGNOSTICS, INC., et al.,

                        Defendants.
-----------------------------------------------------------------------X
SPECIAL SITUATIONS FUND III QP, L.P.
SPECIAL SITUATIONS CAYMAN FUND, L.P.,
and SPECIAL SITUATIONS PRIVATE EQUITY
FUND, L.P., Individually and on Behalf of all
Others Similarly Situated,

                         Plaintiffs,

          -against-

**ORDER**
20-2706 (ARR) (ARL)

20-2758 (ARR) (ARL)

20-2961 (ARR) (ARL)

20-3753 (ARR) (ARL)

CHEMBIO DIAGNOSTICS, INC., et al.,

                    Defendants.

------------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Before this Court are four cases related to the acquisition of Chembio Diagnostics, Inc. ("Chembio") securities between March 12, 2020[1] and June 16, 2020 and the public disclosures made in connection with the company. The plaintiffs in each of the above-captioned putative class actions allege violations of the federal securities laws and seek to pursue remedies under Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B) and/or Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") against the Chembio and certain of its top officials. Several motions have been filed pursuant to Rule 42(a) of the Federal Rules of Civil Procedure seeking consolidation of the cases. Motions have also been filed for the appointment of lead plaintiff and lead counsel pursuant to 15 U.S.C. § 78u–4(a)(3)(B) and Fed. R. Civ. P. 23. For the reasons set forth below, the actions are consolidated, the movants Special Situations Fund III QP, L.P. ("Fund III"), Special Situations Cayman Fund, L.P. ("Cayman Fund"), and Special Situations Private Equity Fund, L.P. ("PE Fund")(collectively, the "Funds") and Municipal Employees' Retirement System of Michigan ("MERS") are appointed co-lead plaintiffs in the securities actions and their choice of counsel are appointed co-lead counsel.

---

[1] The actions bearing index numbers 20-cv-2706, 20-cv-2758 and 20-3753 propose a class period of April 1, 2020 through June 16, 2020. The action bearing index number 20-cv-2961 uses a class period of March 12, 2020 through June 16, 2020. For the purpose of this report, the Court has adopted the March 12, 2020 date since more inclusive class periods are favored at the lead plaintiff stage. *In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

**BACKGROUND**

A.      **The Facts**

Chembio is a medical diagnostics company headquartered in Hauppauge, New York that provides point-of-care testing products to detect and diagnose infectious diseases.[2] *See* 20-2706 ECF No. 24, Rolnick Decl. Ex. C, ¶ 3.  According to the movants, Chembio owns proprietary testing technology called "Dual Path Platform" ("DPP"), which is a rapid diagnostic test that uses a drop of blood from the patient's fingertip to deliver a result within fifteen minutes.  *Id.*  In February 2020, in response to the COVID-19 pandemic, Chembio allegedly changed its business model to focus its DPP testing on the detection and diagnosis of COVID antibodies.  *Id.* ¶ 5.  By March 12, 2020, Chembio issued a press release titled, "Chembio and LumiraDx Limited ("LumiraDx") Announce COVID-19 Strategic Partnership." *See* 20-2758, ECF No. 1 ¶ 23.  The press release announced Chembio's partnership with LumiraDx, a company focused on developing, manufacturing, and commercializing point-of-care diagnostic platforms, while primarily focusing on developing a diagnostic test for the detection of the COVID-19 virus and IgM and IgG antibodies on both of their DPP platforms (the "DPP COVID-19 Test").  *Id.*

The events in early 2020 boosted the price of Chembio shares.  *Id.*  In fact, on March 20, 2020, Chembio common shares rose 54%.  *Id.*  Then, on April 15, 2020, Chembio secured Emergency Use Authorization ("EUA") for its DPP antibody test from the U.S. Food and Drug Administration by suggesting that the DPP's accuracy was "100%" for total antibodies.  *See* 20-2706, ECF No. 24, Rolnick Decl. Ex. C, ¶ 6.  Nine days later, Chembio's stock closed at $15.54 per share, an increase of more than 400%.  *See* 20-2758, ECF No. 1 ¶ 4.

---

[2] For ease of reference, the Court has primarily compiled the facts from the class action complaint filed by the Funds.  Where necessary, the Court will provide citations to facts drawn from the other complaints.

Shortly thereafter, on May 7, 2020, Chembio undertook a public offering of 2.338 million shares of common stock at $11.75 per share. *See* 20-2706, ECF No. 24, Rolnick Decl. Ex. C, ¶ 8. The offering was conducted pursuant to a Registration Statement filed with the U.S. Securities and Exchange Commission ("SEC") on that same day. *Id.* According to the movants, Chembio received approximately $30.8 million from the sale. *See* 20-2758, ECF No. 1 ¶ 5.

On June 16, 2020, after the market closed, the FDA issued a press release disclosing that it was revoking Chembio's EUA due to "performance concerns with the accuracy of [Chembio's DPP] test." *See* 20-2706, ECF No. 24, Rolnick Decl. Ex. C, ¶ 9. More specifically, the FDA stated that the performance of the DPP device "may be both inconsistent and lower than described" by Chembio publicly and directly to the FDA. *Id.* The movants all assert that Chembio was aware of the problems with its antibody test by April, well before the May public offering, but it still touted the accuracy of the test in order to sell millions of dollars of stock to the public on false pretenses. *Id.* ¶¶ 38-39. Immediately following the issuance of the press release, Chembio shares fell by $6.04 per share, a decline of more than 60%. *Id.* ¶ 11.

### B. Procedural History

As noted above, four actions have been filed in connection with the sale of Chembio securities. *Chernysh v. Chembio Diagnostics, Inc., et al.*, 20-cv-02706 (the "*Chernysh* action") was commenced on June 18, 2020 against Chembio and certain of its officers and directors, for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. That same day, a notice was issued pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), advising class members of the allegations and claims in the complaint, the proposed class period, and the option to seek appointment as lead plaintiff. On June 22, 2020, *Gowen v. Chembio Diagnostics, Inc., et al.,* 20-cv-2758 (the "*Gowen* action"), was filed alleging the same

Securities Exchange Act allegations against the same defendants.  On July 3, 2020, *Bailey v. Chembio Diagnostics, Inc., et al.*, 20-cv-2758 (the "*Bailey* Action"), was filed alleging the same allegations with the same class period and against the same defendants as the other lawsuits but adding Neil A. Goldman as a defendant.  Finally, on August 17, 2020, *Special Situations Fund III QP, L.P. et al v. Chembio Diagnostics, Inc. et al.,* 20-cv-3753 (the "*Funds'* Action") was filed alleging the same claims under both the Securities Exchange Act and under Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act").

Between August 17, 2020 and September 8, 2020, the Court received motions seeking to consolidate the cases and for the appointment of lead plaintiff and lead counsel from the following parties: Jay Patel (ECF No. 18); Craig Engel (ECF No. 20); the Funds (ECF No. 22); Michael T. Dolan (ECF No. 25); Jeff Kone (ECF No. 28); Benjamin Wallace (ECF No. 30); A. Majeed Qasim (ECF No. 34); and MERS (ECF No. 36).  However, after the initial motions were filed, Jay Patel, Craig Engel, Michael T. Dolan, Benjamin Wallace and A. Majeed Qasim all filed motions to withdraw their applications or notices of non-opposition to the competing claims.  Jeff Kone ("Kone"), who has a smaller financial interest, has not filed any papers responding to the competing claims.  Accordingly, the only parties being considered for the appointment of lead plaintiff and lead counsel are the Funds and MERS.  In addition, the Court has received responsive papers from Chembio.  Chembio does not oppose the motions to consolidate.  Nor does it take a position with respect to the appointment or approval of lead plaintiff or the approval of lead plaintiff's selection of counsel.  Chembio does object, however, to the proposed order of Kone, which includes an evidence preservation provision that differs from the PSLRA's evidence preservation provision.[3]

---

[3] Chembio's objection to Kone's proposed evidence preservation provision is sustained.  Kone has not responded to the objection.

### C. The Remaining Movants' Losses

The Funds purchased 125,000 shares directly out of the May Offering. *See* 20-2706, ECF No. 24, Rolnick Decl. Ex. A. In addition, between April 1, 2020 and May 21, 2020, the Funds made additional net purchases of 128,000 shares of Chembio common stock on the open market. *Id.* The Funds allege in their memorandum that they have collectively lost more than $1.76 million on their investments. Funds' Mem. at 1, ECF No. 23, 4-5. In a further declaration submitted in response to MERS opposition, Ryan Nelson, the principle analyst responsible for researching and evaluating the Funds' investment in Chembio common stock, clarifies that the Funds suffered nearly $1million in losses when the FDA revoked Chembio's EUA and disclosed the ineffectiveness and unreliability of the Covid Test. *See* 20-2706, ECF No. 52, Nelson Decl. ¶ 20. In comparison, MERS purchased 155,394 shares of Chembio stock during the class period and alleges that it suffered approximately $631,781 in losses as a result of the defendants' wrongdoing. *See* 20-2706, ECF No. 38, Rosenfeld Decl., Exs. B, C.

### DISCUSSION

### A. Consolidation

"The PSLRA dictates that prior to the appointment of a lead plaintiff, the Court must decide whether or not to consolidate the actions." *Yeroushalami v. DHB Indus., Inc.*, No. CV 05-4296 JS ETB, 2006 WL 8423950, at *2 (E.D.N.Y. Jan. 9, 2006), report and recommendation adopted sub nom. *NECA-IBEW Pension Fund (the Decatur Plan) v. DHB Indus., Inc.*, No. 05-CV-4345(JS)(ETB), 2006 WL 8423951 (E.D.N.Y. Jan. 31, 2006) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Pursuant to Federal Rule of Civil Procedure 42(a), consolidation is appropriate where there are actions involving "common question[s] of law or fact" pending before the Court. *See* Fed. R. Civ. P. 42(a). Moreover, in securities actions, "where the complaints are based on

6

the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Yeroushalami*, 2006 WL 8423950, at *2 (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998)). Here, the defendants and all of the movant plaintiffs seek consolidation. In addition, all of the parties agree that the four cases involve common questions of law and fact sufficient to warrant consolidation. Finally, judicial economy will be promoted by consolidation and it will avoid unnecessary costs to the parties. *See In re Bear Stearns Cos., Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 08 MDL 1963(RWS), 2009 WL 50132, at *4 (S.D.N.Y. Jan.5, 2009). Accordingly, the actions will be consolidated into the *Chernysh* action (20-cv-2706). The consolidation is for all purposes, including, but not limited to, discovery, pretrial proceedings and trial proceedings.

**B.     Lead Plaintiff and Counsel**

Pursuant to the PSLRA, the Court is directed to appoint a lead plaintiff in private securities class actions who is the member of the purported plaintiff class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u–4(a)(3)(B)(i). This provision was intended to ensure that parties with "significant financial interests in the litigation" would oversee securities class actions and control the management of such suits, including the selection of counsel. *In re McDermott Int'l Sec. Litig.*, No. 08 Civ. 9943(DC), 2009 WL 579502, at *1 (S.D.N.Y. Mar. 6, 2009). The Courts in this Circuit use a two-process to determine the "most capable" class representative. First, the PSLRA establishes a statutory presumption that a party is the most adequate plaintiff is 'the person or group of persons' who or that (a) has either filed the complaint or made a motion for appointment as lead plaintiff, (b) has 'the largest financial interest in the relief sought by the

class,' and (c) 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 118 (S.D.N.Y. 2010)(citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)).  In deciding which proposed lead plaintiff has "the largest financial interest in the relief sought by the class," courts consider four factors: "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss." *In re McDermott Int'l*, 2009 WL 579502, at *2.  "The fourth factor, loss, is well-established to be the 'critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.'" *Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *1 (S.D.N.Y. Mar. 2, 2020) (quoting *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011)).

Nonetheless, once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, other members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of "unique defenses." *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 118 (S.D.N.Y. 2010) (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)).  Moreover, the Court has the discretion to appoint more than one lead plaintiff.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391–92 (S.D.N.Y.2008) (permitting group of investors to be appointed lead plaintiff).

As noted above, here, the Funds and MERS have timely moved for appointment as lead plaintiff.  Between the two movants, the Funds appear to have the largest financial interest both in terms of the gross number of shares purchased and the net loss.  Specifically, the Funds lost more than $998,000 on their purchases of stock directly in Chembio's May Offering and more

8

than $769,000 on open market purchases of Chembio common stock. Funds' Further Mem. at 8, ECF No. 46. In addition, the Funds contend that they are the only movant with standing to assert Section 11 claims on behalf of direct purchasers from the May Offering. *Id.* Indeed, the movant with the next largest financial interest – MERS - did not buy its first share of Chembio stock until June 2020, after the public offering, and purchased such stock on the open market.

The Funds have also satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure as they have made a preliminary showing that they can meet the adequacy and typicality requirements of Rule 23. Janbay, 272 F.R.D. at 120 (S.D.N.Y. 2010) (citing *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y.2003)("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met."). The Funds claims "arise[ ] from the same course of events" and they make "similar legal arguments to prove the defendant[s'] liability" as the other putative class members. *In re Bear Stearns Companies, Inc. Sec., Derivative, & Employee Ret. Income Sec. Act (Erisa) Litig.*, No. 08 M.D.L. 1963 (RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009), amended on denial of reconsideration sub nom. *In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.,* No. 08 M.D.L. 1963(RWS), 2009 WL 2168767 (S.D.N.Y. July 16, 2009)(quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)). The Funds and all class members allegedly purchased Chembio securities at artificially inflated prices as a result of the defendants' misrepresentations concerning the accuracy of the antibody test and suffered damages thereby.

Finally, the Funds have also retained competent and experienced counsel. *See Kaplan v. Gelfond,* 240 F.R.D. 88, 94 (S.D.N.Y. 2007), on reconsideration in part sub nom. *In re IMAX Sec. Litig.,* No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009)("The adequacy

9

requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."). In fact, the Funds have previously served as lead plaintiffs with the Securities Litigation Group at Lowenstein Sandler LLP acting as Lead Counsel. Accordingly, the Court finds that the Funds are entitled to the most adequate plaintiff presumption and turns to MERS counter-arguments

As stated above, the presumption that the Funds are the most adequate lead plaintiff may be rebutted if there is evidence that the Funds will not fairly and adequately protect the interests of the class or is subject to unique defenses that render it incapable of adequately representing the class. See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). MERS contends that the Funds should be disqualified from consideration as most adequate plaintiff. To begin with, MERS notes that the Funds are the only movant that declined to file transactional data for the inclusive class period between March 12, 2020 and June 16, 2020. MERS suggests that the Funds did so to mask the fact that they reaped more than $2 million in net proceeds on the hundreds of thousands of shares that they purchased before the start of the class period and sold during the class period at artificially inflated prices. See MERS Further Mem. at 9, ECF No. 47. To this end, MERS argues that net sellers and net gainers like the Funds cannot be appointed as lead plaintiff. *See Born v. Quad/Graphics, Inc.*, No. 19-CV-10376 (VEC), 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020)(citing *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) ("[c]ourts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices"). Moreover, MERS argues that the Funds waited to file the new

10

complaint until the eve of the lead plaintiff deadline and then bootstrapped previously-unasserted claims under §§11 and 15 of the Securities Act of 1933 ("1933 Act") to the existing Securities Exchange Act of 1934 ("1934 Act") complaint in order to argue that they had a unique standing to pursue 1933 Act claims, which implicates less than 3% of the shares traded during the class period.

MERS' arguments has some merit. Certainly, some courts have refused to appoint as lead plaintiff net sellers who are also net gainers. *See Foley v. Transocean Ltd*., 272 F.R.D. 126, 132 (S.D.N.Y. 2011)(citing *In re Bausch & Lomb Inc. Sec. Litig*., 244 F.R.D. 169, 173–74 (W.D.N.Y.2007) (collecting cases)). Although the Funds attempt to distinguish the facts in cases rejecting net sellers by focusing on the shares, they purchased during the May Offering, the Funds do not specifically deny that they profited during the class period on the shares they had bought earlier in the year. In fact, despite having an opportunity to do so, since the Funds have not disclosed to the Court their total gain on Chembio shares during the class period, the Court assumes they were net sellers, which may be subject to unique defense. Nonetheless, the Funds are also the only movant with standing to pursue strict liability Section 11 claims against Chembio. As such, the Court finds that the interests of a proposed class will be served best by the appointment of the Funds and MERs as co-lead plaintiffs. As such, Lowenstein Sandler LLP and Robbins Geller Rudman & Dowd LLP are appointed co-lead counsel; however, the firms may not duplicate attorneys' services and co-lead counsel must ensure that their representation does not in any way increase attorneys' fees and expenses. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co*., 229 F.R.D. 395, 421 (S.D.N.Y. 2004). Given this determination, all other motions for lead plaintiff and lead counsel are denied.

Unless otherwise agreed among the parties, co–lead plaintiffs shall file an amended

consolidated class action complaint on or before 30 days from the date of entry of this order. The

defendants shall submit any answer or defense thereto on or before 30 days after the filing of the

amended consolidated class action complaint.

Dated:  Central Islip, New York          **SO ORDERED:**
          December 29, 2020


_____/s_____
ARLENE R. LINDSAY
United States Magistrate Judge