UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                   :

In re CHEMBIO DIAGNOSTICS, INC. SECURITIES    :       20-CV-2706 (ARR) (PK)
LITIGATION                                     :       (Consolidated)
                                     :

---------------------------------------------------------------- :       <u>NOT FOR ELECTRONIC</u>
                                     :       <u>OR PRINT PUBLICATION</u>

This Document Relates To:                    :
                                     :

       ALL ACTIONS                      :       **MEMORANDUM**
                                     :       **DECISION & ORDER**

---------------------------------------------------------------- X

ROSS, United States District Judge:

On February 23, 2022, I entered an Opinion and Order (the "Opinion") dismissing the Consolidated Amended Complaint (the "Complaint") filed by Municipal Employees' Retirement System of Michigan, Special Situations Fund III QP, L.P., Special Situations Cayman Fund, L.P., and Special Situations Private Equity Fund, L.P. (collectively, "plaintiffs") as against defendants Chembio Diagnostics, Inc. ("Chembio") and the senior officers and directors of Chembio named in the Complaint (the "individual defendants"). On March 9, plaintiffs timely moved for reconsideration of the Opinion under Local Civil Rule 6.3 and Federal Rule of Civil Procedure 54(b). For the reasons set forth below, plaintiffs' motion for reconsideration is denied.

## BACKGROUND

Familiarity with the facts of the case is assumed, and therefore they are summarized only briefly. This is a consolidated securities class action against—as relevant to plaintiffs' instant motion—Chembio and several of its senior officers and directors (the "Chembio defendants") concerning Chembio's May 7, 2020, secondary stock offering and Chembio's then-flagship product, a COVID-19 antibody test (the "Test"). Op. & Order 1 ("Op."), ECF No. 93. The Food

and Drug Administration ("FDA") granted the Test an Emergency Use Authorization ("EUA") on April 14, 2020, based on data from Chembio supporting the Test's accuracy. *Id.* at 3. Chembio then applied to extend the EUA from laboratory to point-of-care settings. *Id.* at 4. On April 29, 2020, the FDA called Chembio (the "April 29 call") and informed an unidentified employee that, because independent analyses raised concerns about the Test's performance, the FDA would not be expanding the Test's EUA to point-of-care settings. *Id.* Chembio proceeded to submit to the FDA further performance data for the Test. *Id.* While Chembio was submitting this data, it conducted a secondary stock offering, which closed on May 11, 2020. *Id.* at 4, 6. In promoting its stock offering, Chembio and its senior officers and directors made several public statements about the Test's performance, including its accuracy. *Id.* at 4–6. The FDA ultimately revoked the EUA on June 16, 2020, stating that the Test was far less accurate than Chembio had claimed. *Id.* at 7−8.

Plaintiffs brought suit against Chembio, several directors of Chembio (the "director defendants"), Chembio's Executive Board Chair and former interim Chief Executive Officer ("CEO"), Gail S. Page, Executive Vice President and Chief Financial Officer, Neil A. Goldman, and the underwriters of the secondary offering, alleging they violated the Securities Act of 1933 (the "Securities Act") by filing offering documents containing materially misleading claims about the Test's accuracy. *Id.* at 9, 24. Plaintiffs also sued Chembio, Ms. Page, Mr. Goldman, Richard L. Eberly, Chembio's CEO and President since March 16, 2020, and Javan Esfandiari, Chembio's Chief Science and Technology Officer (collectively, the "officer defendants"), as well as the director defendants, alleging that they violated the Securities and Exchange Act of 1934 (the "Exchange Act") by intentionally or recklessly making statements about the Test's accuracy that they knew or should have known were contradicted by the information relayed on the April 29 call. *Id.* at 9–10, 13−14.

In the challenged Opinion, I dismissed plaintiffs' claims against the Chembio defendants. *Id.* at 24, 30−31, 37. I found that plaintiffs failed to state Exchange Act claims against Chembio, the officer defendants, and the director defendants because the Complaint inadequately pleaded that these defendants had the requisite scienter to have committed securities fraud. *Id.* at 18–24, 36–37. I also found that plaintiffs failed to state Securities Act claims against Chembio, the director defendants, Ms. Page, and Mr. Goldman because those claims sounded in fraud yet failed to plead scienter. *Id.* at 27–31, 36–37. The Opinion dismissed plaintiffs' Exchange Act claims with prejudice, but dismissed their Securities Act claims against Chembio, the director defendants, Ms. Page, and Mr. Goldman with leave to amend. *Id.* at 37.[1] Plaintiffs now move for reconsideration of all of the above. *See* Mem. Supp. Mot. for Partial Recons. ("Pls.' Mem."), ECF No. 99.

## LEGAL STANDARD

"Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Anwar v. Fairfield Greenwich Ltd.*, 164 F. Supp. 3d 558, 560 (S.D.N.Y. 2016) (internal citation and quotation marks omitted). "The reconsideration rule must be narrowly construed and strictly applied so as to avoid duplicative rulings on previously considered issues." *Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (internal citation and quotation marks omitted); *see also Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." (internal citation and quotation marks omitted)). Under Federal Rule of Civil Procedure 59 and Local Civil Rule 6.3, "a court may grant reconsideration where the party

---

[1] The Opinion denied defendants' motion to dismiss the Securities Act claims against the underwriters. Op. & Order 31–36 ("Op."), ECF No. 93.

moving for reconsideration demonstrates an intervening change in controlling law, the availability

of new evidence, or the need to correct a clear error or prevent manifest injustice." *Sikhs for Just.*

*v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (internal citation and quotation marks omitted).

Ultimately, a motion for reconsideration is "committed to the sound discretion of the district

court." *U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 667 (S.D.N.Y.

2020) (citation omitted).

## DISCUSSION

In their motion for reconsideration, plaintiffs attempt to relitigate the same issues resolved

in the Opinion. Even if this were a proper use of a motion for reconsideration, *see supra* Legal

Standard, plaintiffs are nonetheless wrong on the merits. The motion is therefore denied in its

entirety.

**I.   Plaintiffs' Motion as to Their Exchange Act Claims Is Denied.**

Plaintiffs move for reconsideration of my dismissal of their Exchange Act claims on several

grounds. None is meritorious.

**A.  Individual defendants' scienter.**

A securities fraud claim brought under the Exchange Act must meet the heightened

pleading standard of Federal Rule of Civil Procedure 9(b), *Fresno Cnty. Emps.' Ret. Ass'n v.*

*comScore, Inc.*, 268 F. Supp. 3d 526, 535 (S.D.N.Y. 2017), which requires pleading, *inter alia*, the

element of scienter, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011). To

adequately plead scienter, a plaintiff must proffer facts that support a "strong inference" of a mental

state "embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 318 (2007). This mental state can be established by "alleging facts to show

either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong

circumstantial evidence of conscious misbehavior or recklessness," *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009), that is, "a state of mind approximating actual intent, and not merely a heightened form of negligence," *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) (internal citation and quotation marks omitted). Where a plaintiff does not allege that a defendant had motive and opportunity to defraud the public, he or she must instead plead facts that support "a stronger inference of recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001).

Applying this standard to plaintiffs' allegations, the Opinion concluded that plaintiffs had failed to sufficiently plead scienter on behalf of any of the officer and director defendants because plaintiffs had not plausibly alleged motive or "a stronger inference of recklessness," *id.*, on the part of any individual defendant. *See* Op. 16−22. Plaintiffs now argue that, to the contrary, the Complaint adequately pleaded that the individual defendants were reckless in 1) failing to disclose the increased likelihood that the EUA for the Test would be revoked, and 2) failing to disclose facts that they knew, or to which they had access, that contradicted their public statements about the Test's accuracy. Pls.' Mem. 5–13. Plaintiffs also allege that the Complaint adequately pleaded that the individual defendants had motive to commit fraud. *Id.* at 15−16. Finally, plaintiffs argue that the Court failed to consider their allegations of individual defendants' motive and recklessness as a whole in determining whether these allegations supported a compelling inference of scienter. *Id.* at 14–16.

Turning first to plaintiffs' argument that defendants were reckless in failing to disclose in public statements the increased risk that the EUA would be revoked, plaintiffs do not identify any grounds warranting reconsideration of my previous decision, *see* Op. 19–20. Under Second Circuit case law, a reckless state of mind "approximat[es] actual intent, not . . . heightened . . . negligence."

*Novak*, 216 F.3d at 312 (citation omitted); *see also* Op. 16. The Opinion reasoned that, even assuming *arguendo* that the officer and director defendants knew about the increased risk of revocation of the EUA, individual defendants' state of mind did not rise to this standard of recklessness. Op.19−20. Rather, under the Second Circuit standard, the individual defendants' state of mind would have been reckless only if defendants knew, but did not disclose, that it was inevitable that Chembio would lose its EUA for the Test. *Id.* Plaintiffs argue that, to the contrary, knowledge of the increased risk is itself sufficient to support a compelling inference of scienter. Pls.' Mem. 7–12. Plaintiffs cite few authorities for this proposition and only two that could reasonably support the proposition that failure to disclose a known but future risk amounts to recklessness.[2] Both authorities, however, identify thresholds for disclosure that require more than a mere increased risk of a future event. *Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016), concerned the defendants' recklessness in not disclosing the *near certainty* of civil and criminal penalties for extensive fraud committed by an employee. *See id.* at 96–97. In *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000), the defendants' recklessness crossed an even-higher threshold: they knew that there was inventory they would not be able to sell, so they inflated the company's reported financial results to hide this certainty. *Id.* at 311. Plaintiffs here, by contrast,

---

[2] Plaintiffs' citations to *In re Peabody Energy Corp. Securities Litigation*, No. 20-CV-8024 (PKC), 2022 WL 671222 (S.D.N.Y. Mar. 7, 2022) and *Setzer v. Omega Healthcare Investors, Inc.*, 968 F.3d 204 (2d Cir. 2020), *see* Mem. Supp. Mot. for Partial Recons. 10–11, ECF No. 98 ("Pls.' Mem."); Reply Mem. Supp. Mot. for Partial Recons. 7 n.6, ECF No. 102, do not support their argument because both cases concerned the defendants' failure to disclose events that had already happened, not events that were simply at risk of happening. *See Peabody*, 2022 WL 671222, at *5–6, *12, *20−21 (noting that while a fire had already broken out at the defendants' mine, the defendants publicly described it as a "heating event" and failed to disclose smoke or fire in a subsequent SEC filing); *Setzer*, 968 F.3d at 208–09, 213−15 (finding the defendants were reckless in announcing positive income projections even though one of its major tenants was already delinquent on its rent). The rest of plaintiffs' cites in this section pertain instead to defendants' alleged failure to disclose data contradicting their public statements, a separate theory discussed below.

6

have pleaded that after the April 29 call, the Chembio defendants were aware merely of an increased *risk* of revocation, *see* Op. 19−20, not that there was a near certainty that the Test would be revoked. Indeed, it seems highly unlikely that the Chembio defendants knew that revocation was certain or even likely when, following the call, Chembio continued to submit more data to the FDA. *See* Op. 20. Indeed, the FDA requested more data on the Test's accuracy as late as May 22, 2020, implying that the FDA was still evaluating the Test.[3] *Id.* Therefore, even assuming that the individual defendants knew that there was an increased risk that the EUA would be revoked, their failure to disclose this increased risk would not have been reckless.

Plaintiffs next argue that officer and director defendants were reckless in their statements (made during a May 4, 2020, conference call with investors and in Chembio's Registration Statement) about the Test's accuracy because they were (or should have been) aware of the Test's contradictory data. Pls.' Mem. 12–13. Plaintiffs, however, fail to identify any grounds for reconsideration of my previous conclusion: that the Complaint did not plead sufficient facts to find the officer and director defendants reckless on this basis, Op. 20−22. Plaintiffs first argue that the Opinion concluded that after the April 29 call, all Chembio defendants were aware of data suggesting that the Test was not 100% accurate after 11 days. *See* Pls.' Mem. 6, 13. The Opinion made no such finding, however. To the contrary, the Opinion found that plaintiffs sufficiently pleaded that during the April 29 call, the FDA told *someone* at Chembio about this data, thus

---

[3] Plaintiffs attempt to relitigate my conclusion that defendants' continuing to submit data to the FDA cuts against a finding that defendants were reckless. Plaintiffs proffer the alternative inference that Chembio's sending data "support[s] an inference of [d]efendants' increased concerns of revocation," Pls.' Mem. 11. Given that the FDA asked Chembio to submit more data as late as May 20, 2022, after the secondary stock offering, the basis for plaintiffs' inference is unclear. As I am required to draw only all *reasonable* inferences in plaintiffs' favor, I decline to accept plaintiffs' proffered inference here. And because plaintiffs cite no authorities disputing my prior conclusion, I do not repeat the Opinion's analysis.

supporting the inference that *someone* at Chembio was on notice that the Test was not 100% accurate after 11 days. *See* Op. 19. As explained in the Opinion, however, establishing that *someone* at Chembio knew about the contradictory data does not support that the officer and director defendants were on notice that the Test was not as accurate as they publicly claimed. *Id.* at 20–22.

Nor do the authorities plaintiffs cite establish that these executives were or should have been aware of the contradictory data. Even if these authorities were controlling and cited in plaintiffs' underlying briefing,[4] they would nevertheless be unhelpful to plaintiffs. In each of these cited cases, the plaintiffs pleaded facts that more strongly supported an inference of the defendants' scienter than do the facts pleaded here. *See In re Peabody Energy Corp. Sec. Litig.*, No. 20-CV-8024 (PKC), 2022 WL 671222, at *22 (S.D.N.Y. Mar. 7, 2022) (noting that the individual defendants, who helped coordinate the challenged public statements about the mine fire, were highly likely to have known about the fire because they were members of the task force that monitored safety at the mine); *In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926 (JPO), 2018 WL 1595985, at *1−2, *12–13 (S.D.N.Y. Mar. 28, 2018) (noting that the company's executives were highly likely to have already known that the EpiPen was misclassified as a generic drug because the company had been repeatedly warned that it was by the Centers for Medicare & Medicaid Services and had received a subpoena from the Department of Justice regarding an investigation into whether the EpiPen was properly classified); *In re Delcath Systs., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 335 (S.D.N.Y. 2014) (inferring that the CEO knew about the problems with the clinical trial data because he was involved in all decisions at the small company and had made detailed public statements about the clinical

---

[4] The one cited authority that was cited in the briefing on the underlying motion, *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359 (S.D.N.Y. 2012), was distinguished in the Opinion. *See* Op. 22 n.10. Because plaintiffs do not address the grounds on which I distinguished *Lockheed*, I do not repeat them here.

trials). By contrast, the Complaint in this case fails to identify the means by which the individual defendants here would have, in all likelihood, known about the contradictory data: plaintiffs have not pleaded that the individual defendants were directly monitoring the Test's development, *see Peabody*, 2022 WL 671222, at *22; none of the challenged public statements "evince[d] a familiarity" on the part of the individual defendants "with the data in the trials," *see Delcath*, 36 F. Supp. 3d at 335; and the FDA's denial of the EUA extension application and request for more data cannot be compared to a significant government investigation of which a company's top executives must be aware, *see Mylan*, 2018 WL 1595985, at *12–13; *see also Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 807 (S.D.N.Y. 2020) (framing *Mylan* as standing for the proposition that such a "significant threat from a key government regulator" would "invariably be brought to the attention of senior executives"). Rather, the situation here is much closer to interim FDA feedback, which courts consider to be "not material because it does not express a binding agency decision and is subject to change as the FDA and pharmaceutical companies work together to develop viable clinical trials and approvable licensing applications," *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 541–42 (S.D.N.Y. 2015) (collecting cases).

Turning to plaintiffs' arguments regarding my determination that they failed to adequately plead defendants' motive, Op. 18–19, plaintiffs proffer no persuasive grounds for reconsidering my conclusion. The Second Circuit has identified two grounds upon which motive may be pleaded: that executives personally profited from insider sales, *see id.* (collecting cases), or that the company's financial survival depended on the stock offering, *see, e.g.*, *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 262, 270 (2d Cir. 1993). Plaintiffs argue that, in addition to these two grounds, courts have also "found motive for *all* defendants when a corporation sells shares in an offering before disclosing adverse information." Pls.' Mem. 16 n.8. In the cases plaintiffs cite for this

proposition, however, the plaintiffs adequately pleaded one of the two Second Circuit grounds for motive. *See Time Warner*, 9 F.3d at 262 (citing direct evidence that the company needed to fundraise to survive because it was facing "a multi-billion[-]dollar balloon payment on [its] debt"); *Skiadas v. Acer Therapeutics Inc.*, No. 19-CV-6137 (GHW), 2020 WL 3268495, at *10–11 (S.D.N.Y. June 16, 2020) (noting that the company needed the money from the stock offering to continue operating); *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 474−76 (S.D.N.Y. 2013) (noting that the executives had personally sold stock and thus directly profited from the offering).

Plaintiffs also appear to argue that they pleaded the financial survival grounds for motive by alleging that the Test was Chembio's most important product and therefore critical to Chembio's future, thus motivating defendants to conceal negative information about it for the company's benefit. Pls.' Mem. 15. In the Opinion, I found this theory insufficient. Op. 18–19. Plaintiffs' support for their point is two out-of-circuit district court cases. Even if these cases were controlling here, they are factually distinguishable from the instant case because the plaintiffs there had thoroughly pleaded that the defendant companies were in dire financial straits and desperate for a capital infusion to fund their operating expenses. *See Voulgaris v. Array Biopharma Inc.*, 17-CV-2789 (KLM), 2020 WL 8367829, at *24 (D. Colo. Nov. 24, 2020) (finding that the plaintiffs had adequately alleged the defendants' motive where, prior to the offering, the defendant company had "amassed an accumulated deficit of $801.4 million and needed additional operating capital to ensure its ability to continue operations"); *Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1128 (D. Colo. 2017) (concluding that scienter could be inferred from the plaintiffs' pleadings that the defendant company had "generated no sales revenue during the Class Period, but had operating expenses of more than $475 million during the same time," because, if true, "the [d]efendants had a strong incentive to mislead potential investors about the efficacy and safety of [their drug] in

order to attract the investors' capital"). No pleadings of similar particularity regarding Chembio's financial situation prior to the stock offering appear in the Complaint here.

Plaintiffs' final argument in defense of their pleading of individual defendants' scienter is that I failed to weigh their pleadings as a whole. Pls.' Mem. 14–16 (asserting that I "failed . . . to assess the total weight of the circumstantial allegations of [defendants' recklessness] together with the allegations of motive and opportunity." (emphasis omitted) (quoting *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 137–38 (2d Cir. 2021))). To the contrary, the Opinion noted that a court must evaluate "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter," Op. 15 (quoting *Tellabs*, 551 U.S. at 322–23), and proceeded to consider whether the allegations, analyzed together, supported a strong inference of scienter, *see id.* 16−22. In so doing, the Opinion applied the rule that where a plaintiff fails to plead facts demonstrating motive and opportunity to commit fraud, the strength of their allegations of circumstantial evidence of conscious misbehavior or recklessness must be "correspondingly greater" for their fraud claims to survive a motion to dismiss, *see Kalnit*, 264 F.3d at 142 (internal citations omitted). *See* Op. 17, 19–22. Applying this settled principle, the Opinion concluded, as I now conclude again, that the Complaint insufficiently pleaded scienter for the individual defendants.

**B. Chembio's corporate scienter.**

The Opinion dismissed the Exchange Act claims against Chembio because plaintiffs had failed to adequately plead an individual whose scienter could be imputed to Chembio. Op. 23–24. Plaintiffs move for reconsideration of this conclusion, arguing that the Complaint adequately alleges corporate scienter because it proffers Dr. Louise Sigismondi as "*one of* the senior individuals at Chembio who would have been in a position to establish Chembio's scienter." Pls.'

Mem. 13 (internal citation and quotation marks omitted and emphasis added).[5] Plaintiffs appear to be attempting to buttress their insufficient allegations of Dr. Sigismondi's scienter—*see* Op. 23−24—by suggesting that other senior executives had knowledge that *would* meet the pleading standard. No such pleadings appear in the Complaint, however, nor are they referenced in plaintiff's opposition to the underlying motion to dismiss. They do not, therefore, support reconsideration of my conclusion that Chembio's corporate scienter was insufficiently pleaded.

*     *     *

In sum, plaintiffs have not met their burden of establishing that my prior ruling dismissing with prejudice all Exchange Act claims against the Chembio defendants merits reconsideration. I therefore adhere to the Opinion regarding plaintiffs' Exchange Act claims.

## II.   Plaintiffs' Motion as to Their Securities Act Claims Is Denied.

The Securities Act imposes liability on those involved in preparing and publishing an offering's registration statement and prospectus, including all signatories, for untrue statements of material fact or misleading omissions contained in those documents. 15 U.S.C. § 77k. As a general rule, Securities Act claims do not require plaintiffs to plead scienter because "[f]raud is not an element or a requisite" of those claims. *Rombach v. Chang*, 355 F.3d 164, 171 & n.4 (2d Cir. 2004). Where these claims are "premised on allegations of fraud," however, Rule 9(b)'s heightened pleading standard applies. *Id.* at 171.

Finding that the factual pleadings supporting plaintiffs' Securities Act claims against the Chembio defendants substantially intertwined with those supporting their Exchange Act claims,

---

[5] Plaintiffs also request that, if I reconsider my finding that knowledge of an increased risk of revocation is insufficient for scienter purposes, I grant leave to amend to permit plaintiffs to "elaborate on, among other things, [d]efendant Esfandiari's knowledge." Pls.' Mem. 13. Because I have denied reconsideration of this finding, *see supra* Discussion I.A, I do not reach plaintiffs' request for leave to amend.

the Opinion concluded that plaintiffs' Securities Act claims against the Chembio defendants

sounded in fraud and were thus subject to the scienter requirement of Rule 9(b). *See* Op. 27–29.

Having already found that plaintiffs had failed to plead scienter against the Chembio defendants,

the Opinion dismissed these claims. *Id.* at 30–31.

Plaintiffs move for reconsideration of my conclusions (1) that their Securities Act

pleadings against the Chembio defendants sound in fraud and (2) that these pleadings fail to meet

the requirements of Federal Rule of Civil Procedure 9(b) because they do not plead scienter. Pls.'

Mem. 16–21. I find none of their grounds for reconsideration persuasive.

### A. The Securities Act claims sound in fraud.

Plaintiffs dispute the Opinion's determination that their Securities Act claims sound in

fraud because those claims factually overlap with plaintiffs' Exchange Act claims. Pls.' Mem. 18–

21. None of plaintiffs' arguments in support of this assertion is availing.

While I agree with plaintiffs that a securities complaint may plead, as alternative theories of

liability, fraud (under the Exchange Act) and negligence (under the Securities Act), plaintiffs'

Complaint has not done so here. In the Second Circuit, courts accept a securities complaint pleading

fraud and negligence theories in the alternative where the plaintiff supports the two theories with

distinct narratives of the defendants' wrongdoing; the Securities Act claims must be supported by

pleadings that defendants were in fact negligent, rather than engaged in fraud. *Compare In re Atlas*

*Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 502–03 (S.D.N.Y. 2004) (holding

that Securities Act claims sounded in negligence because the plaintiffs alleged that the defendants

failed to conduct a reasonable investigation and lacked reasonable grounds for believing that the

statements in the registration statement and prospectus were not misleading), *and Wallace v.*

*Intralinks*, No. 11-CV-8861 (TPG), 2013 WL 1907685, at *12 (holding that Securities Act claims

sounded in negligence because those claims were based on a theory that "defendants negligently

failed in their duty to investigate and ensure the truth of statements in the registration [statement] and prospectus"), *with Rombach v. Chang*, No. 00-CV-958 (SJ), 2002 WL 1396986, at *4 (E.D.N.Y. June 7, 2002) (finding that Securities Act claims sounded in fraud where the "[p]laintiffs [did] not assert any claim of negligence on the part of the [i]ndividual [d]efendants, nor [did] they specify any basis for such a claim"), *aff'd*, 355 F.3d 164 (2d Cir. 2004), *and In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 299 n.17 (S.D.N.Y. 2021) (concluding that the plaintiffs' separation in their complaint of their Securities Act claims from their Exchange Act claims did not prevent the court from finding that the Securities Act claims sounded in fraud because they "rest[ed] on the same theory" as the Exchange Act claims). While plaintiffs introduce their Securities Act claims in this case with a conclusory allegation that defendants failed to reasonably investigate the data underlying Chembio's claims about the Test's accuracy in the Registration Statement, *see* Op. 27, plaintiffs plead no facts in support of this theory. Instead, the gravamen of plaintiffs' allegations in support of their Securities Act claims is that the Chembio defendants *knew* about the contradictory data but omitted it from the Registration Statement. *See* Op. 27−29. This is the identical theory of liability on which plaintiffs' Exchange Act claims rely.[6] *Id.*

Indeed, one of the authorities that plaintiffs cite further underscores that where, as here, a plaintiff pleads overlapping facts to support his or her Securities Act and Exchange Act claims without alleging separate, self-sufficient theories of liability, the Securities Act claims sound in fraud:

> Although [p]laintiffs attempt to disclaim fraud in connection with the registration statement—which became effective only eight days after the investor conference— [p]laintiffs cannot simultaneously allege that [d]efendants were seeking to perpetrate a massive fraud at the investor conference and contend that any omissions from the

---

[6] Plaintiffs cite *Citiline Holdings, Inc. v. iStar Financial Inc.*, 701 F. Supp. 2d 506, 513 (S.D.N.Y. 2010), to argue that allegations of knowledge are not enough for a Securities Act claim to sound in fraud. Pls.' Mem. 20−21. However, the Opinion did not conclude that the Securities Act claims sounded in fraud purely on the basis of defendants' alleged knowledge; rather, that conclusion was based on an overall evaluation of the Securities Act claims. *See* Op. 26–29.

registration statement were the result of something other than fraud.

*Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 513 (S.D.N.Y. 2010). Similarly, in this case, the Complaint does not articulate how Chembio committed fraud on May 4, 2020, when some of the individual defendants made the allegedly misleading statement about the Test's accuracy (the basis for the Exchange Act claims), *see* Op. 4−5, 20−22, but not on May 7, 2020, when Chembio updated its offering documents (signed by some of the same individual defendants) with the same allegedly misleading statement about the Test's accuracy (the basis for the Securities Act claim), *see id.* at 6, 27−29. In other words, the theory underlying plaintiffs' Securities Act and Exchange Act claims is the same, and therefore the Securities Act claims against the Chembio defendants sound in fraud.

## B.  Rule 9(b) requires pleading scienter.

Plaintiffs also argue that, because scienter is not an element of a Securities Act claim under Sections 11 and 12(a)(2), it was error to dismiss those claims on the ground that plaintiffs failed to plead scienter under Rule 9(b). Pls.' Mem. 16−18. I disagree.

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), instructs that Section 11 or 12(a)(2) claims that sound in fraud are "subject to the test of Rule 9(b)." *Id.* at 170. This test includes the requirement that a fraud claim plead the defendant's state of mind. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Rombach*, 355 F.3d at 170 (instructing that Securities Act claims sounding in fraud must establish, *inter alia*, why the statements were fraudulent); *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 394 (E.D.N.Y. 2013) (finding that the plaintiff "failed to comply with Rule 9(b) with regard to the Section 11 claim[] because it expressly disclaim[ed] all allegations of scienter"); *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 122 (D. Conn. 2005) (noting that to sufficiently plead why the

statements were fraudulent, the plaintiffs must adequately allege that the defendants knew or were reckless in not knowing that the statements at issue in the registration statement were false or misleading). Accordingly, courts in this circuit have consistently applied *Rombach* to dismiss Securities Act claims that sound in fraud but fail to plead scienter. *See, e.g.*, *Gentiva*, 932 F. Supp. 2d at 394; *Caiafa v. Sea Containers Ltd.*, Nos. 06-CV-2565, 06-CV-2670, 06-CV-2744, 06-CV-2776, 06-CV-2909, 06-CV-3099, 06-CV-3563, 06-CV-5655 (RMB), 2008 WL 11516813, at *5–6 (S.D.N.Y. May 15, 2008), *aff'd*, 331 Fed. App'x 14 (2d Cir. 2009) (summary order); *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006); *In re JP Morgan Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005); *NYFIX*, 399 F. Supp. at 122. Plaintiffs fail to proffer a single in-circuit case where the court found that the Securities Act claims sounding in fraud were stated with particularity without addressing scienter.

Plaintiffs' main ground for ignoring *Rombach*'s clear instruction is their citation to the undisputed rule that Securities Act claims that *do not sound in fraud* need not plead scienter, *see, e.g.*, *Rombach*, 355 F.3d at 172 (acknowledging that "[f]raud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2)" that is not "predicated on fraud"); *In re Atlas Air*, 324 F. Supp. 2d at 502–03 (finding that none of plaintiffs' Section 11 claims sounded in fraud); *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82 (1983) (referring to the general requirements of a Section 11 claim although no such claim was before the Court). Pls.' Mem. 17. This rule, however, has no bearing on *Rombach*'s mandate for claims that do sound in fraud. Plaintiffs' remaining arguments against applying this mandate are effectively arguments for overruling *Rombach*, *see* Reply Mem. Supp. Mot. for Partial Recons. 17, ECF No. 102, and thus fall beyond the scope of my authority.

Plaintiffs have therefore failed to establish that I erred in dismissing their Securities Act

claims against the Chembio defendants for insufficiently pleading scienter.[7]

* * *

I adhere to my prior holding that, since plaintiffs' Securities Act claims against the Chembio defendants sounded in fraud but did not address scienter, these claims did not satisfy the heightened pleading standard of Rule 9(b). Those claims were dismissed with leave to amend. Plaintiffs may still do so within three business days of this order, as they requested. *See* Mot. for Ext. Time to File Am. Compl., ECF No. 94; Minute Order, Mar. 4, 2022 (granting extension).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration is denied. An amended complaint, if any, is due within three business days of the date of this order.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:        July 21, 2022
              Brooklyn, New York

---

[7] Plaintiffs cite *In re Atlas Air Worldwide Holdings, Inc. Securities Litigation* for the proposition that "dismissal [of Section 11 claims] is not required if the plaintiffs' failure to plead scienter is the only defect in the complaint," 324 F. Supp. 2d 474, 503 (S.D.N.Y. 2004) (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)). Pls.' Mem. 17. Putting aside the obvious difference between "not required" and "prohibited," the source of this proposition is a Fifth Circuit case concerning the district court's dismissal of a Section 11 claim without leave to amend, *Lone Star*, 238 F.3d at 367, unlike the instant case. Indeed, the *Lone Star* panel went on to state that where a Section 11 claim contains an inadequate averment of fraud, the district court "may dismiss [the claim], without prejudice, placing [the] responsibility [of rewriting the complaint] upon counsel." 238 F.3d at 368. That is precisely what the Opinion did.