UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                               :

In re CHEMBIO DIAGNOSTICS, INC. SECURITIES     :     20-CV-2706 (ARR) (JMW)
LITIGATION                                          :     (Consolidated)
                                               :

---------------------------------------------------------------- :

                                               :     **OPINION & ORDER**

This Document Relates To:                             :
                                                 :

    ALL ACTIONS                                  :
                                                 :

---------------------------------------------------------------- X

ROSS, United States District Judge:

Lead plaintiffs Municipal Employees' Retirement System of Michigan ("MERS"), Special Situations Fund III QP, L.P., Special Situations Cayman Fund, L.P., and Special Situations Private Equity Fund, L.P. (the "Funds") move for (1) certification of a class action for purposes of settlement; (2) approval of the form and manner of settlement notices to members of the class; (3) preliminary approval of the proposed settlement of this action; and (4) scheduling of a settlement hearing. For the reasons set forth below, I certify the class as proposed, approve the form and manner of the proposed notices, provide preliminary approval of the proposed settlement, and schedule the settlement hearing for Monday, June 5, at 11 a.m. I further order the lead plaintiffs to provide certain additional information via their anticipated motion for final approval of the settlement on or before April 24, 2023, so that I and any members of the class who may wish to opt out or object may fully evaluate the terms of the class settlement.

## BACKGROUND

Knowledge of the facts alleged in this action is assumed. During the summer of 2020, four putative class actions were brought against defendant Chembio Diagnostics, Inc. ("Chembio") and several of its senior executives and directors, as well as against Robert W. Baird & Co. Inc.

("Baird") and Dougherty & Company LLC ("Dougherty"). The latter two defendants were the underwriters of Chembio's May 7, 2020, secondary stock offering. The putative class actions alleged violations of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") based on the May 2020 secondary stock offering and Chembio's public representations concerning the efficacy of its COVID-19 antibody test. These actions were consolidated into the current action and lead plaintiffs and class counsel were appointed on December 29, 2020. *See* ECF No. 54 ("Consolidation Order").

Chembio makes diagnostic technology based on its "Dual Path Platform" ("DPP") technology. *See* Consolidated Am. Compl. ¶ 4 ("Compl."), ECF No. 64.[1] At the outset of the COVID-19 pandemic, the Secretary of the Department of Health and Human Services declared that the COVID-19 outbreak in the United States was a public health emergency and began granting emergency use authorizations ("EUAs") for diagnostic and antibody tests. *Id.* ¶¶ 141, 145–46. In March 2020, Chembio developed and launched its DPP COVID-19 IgM/IgG System (the "Test"), which purported to be able to test a blood sample to determine whether the person providing the sample was or had been infected with COVID-19. *Id.* ¶¶ 6, 172, 198. In applying for an EUA, Chembio submitted data representing that the Test had strong success rates at identifying the presence of COVID-19 antibodies and the absence of such antibodies. *Id.* ¶¶ 173–74.

The FDA granted Chembio an EUA for its COVID-19 test for use in laboratory settings, resulting in a sharp increase in Chembio's share price from $3.10 per share on March 11, 2020 to $15.54 per share on April 24, 2020. *Id.* ¶¶ 12–13. Beginning in late April 2020, the FDA informed Chembio that an independent evaluation of the Chembio test demonstrated higher false positive

---

[1] Because the class settlement also settles Exchange Act claims, which are included in the Consolidated Amended Complaint but not the Second Consolidated Amended Complaint, factual allegations are derived from the former unless otherwise indicated.

and false negative rates than Chembio had indicated in its submissions. *See id.* ¶¶ 181, 184. On May 4, 2020, Chembio hosted a conference call with investors during which defendant Richard Eberly, Chembio's CEO, stated that "[t]he accuracy of the [Test] after [eleven] days post the onset of symptoms is 100% for total antibodies." *Id.* ¶ 206.

On May 11, 2020, Chembio's secondary offering of stock closed, during which Chembio sold approximately 2.6 million shares of Chembio stock at $11.75 per share. *Id.* ¶¶ 15, 218. Baird and Dougherty acted as underwriters of the May 2020 stock offering. *Id.* ¶ 90.

On June 16, 2020, the FDA revoked the EUA for Chembio's test, citing the test's "poor clinical performance" and concluding that it was "not reasonable to believe the product may be effective in detecting antibodies against [COVID-19]." Sigismondi Decl., Ex. C, ECF No. 84-1. On June 17, 2020, Chembio acknowledged the revocation of its EUA, and Chembio's share price fell over 60%, to $3.89 per share on June 17, 2020. Compl. ¶¶ 23–25.

After the putative class actions were consolidated, the lead plaintiffs filed a Consolidated Amended Complaint alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) (and Rule 10b-5 thereunder) and 20(a) of the Exchange Act. On February 23, 2022, I dismissed the Securities Act claims, except under Sections 11 and 12(a)(2) as to Baird and Dougherty, and dismissed the Exchange Act claims in their entirety with prejudice. Op. & Order 37, ECF No. 93. Lead plaintiffs moved for reconsideration; I denied this motion on July 21, 2022. ECF No. 106. Lead plaintiffs then filed a Second Consolidated Amended Complaint, which alleged solely Securities Act violations against all defendants. *See* ECF No. 107 ("Am. Compl."). Defendants did not move to dismiss the Second Consolidated Amended Complaint.

The parties entered mediation, and on August 30, 2022 advised the court that they had reached a settlement in principle. *See* ECF No. 113. On December 28, 2022, the lead plaintiffs

filed their motion for preliminary approval of the settlement, class certification, and approval of the class notice. ECF No. 117.

## DISCUSSION

### A. The Motion to Certify the Class Is Granted

Federal Rule of Civil Procedure 23 requires that I certify the action as a class action, including where I am asked to certify the class for settlement purposes. *See* Fed. R. Civ. P. 23(c)(1), (e)(1)(B). A class action may only be maintained where the prerequisites of Rule 23(a) are met and the class action meets the requirements of one of the three types of class actions described in Rule 23(b). Here, the plaintiffs seek to certify the class under Rule 23(b)(3).

The "class" is defined as:

(a) all Persons who purchased Chembio common stock directly in or traceable to Chembio's May 2020 Offering pursuant to the Registration Statement, and (b) all other Persons who purchased or otherwise acquired Chembio securities during the Class Period.

Stipulation & Agreement of Settlement ("Stipulation") ¶ 1.6, ECF No. 117-2.

The definition of "class" excludes defendants themselves, their family, officers of defendant entities, and other related parties, as well as any person or entity who would otherwise be a class member but validly and timely excludes themselves from the class. *Id.* The "class period" is defined as "the period from March 12, 2020 through June 16, 2020, inclusive." *Id.* ¶ 1.8.

### 1. The Rule 23(a) Requirements Are Satisfied

All class actions must comply with the four requirements of Rule 23(a). First, the class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Second, there must be "questions of law or fact common to the class." *Id.* 23(a)(2). Third, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." *Id.*

23(a)(3). Finally, I must find that "the representative parties will fairly and adequately protect the interests of the class." *Id.* 23(a)(4).

    a.   Numerosity

    The requirement that the number of putative class members be sufficiently numerous that joinder of all members in this action would be impracticable is easily met. There were more than 17 million outstanding shares of Chembio stock during the Class Period, and 2.6 million shares were issued in the May 2020 offering. *See* Compl. ¶¶ 15, 266(b). "[T]he numerosity inquiry is not strictly mathematical but must take into account the context of the particular case . . . ." *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). Courts have identified this threshold as met where there are as few as fourteen members, but generally treat any proposed class of more than forty potential class members as meeting numerosity requirement of Rule 23(a)(1). *See Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y.*, 331 F.R.D. 279, 288–90 (S.D.N.Y. 2019) (collecting cases and determining that there would likely be more than forty potential class members). Given the number of outstanding shares during the class period, the numerosity requirement is met and joinder of all class members would be impracticable.

    b.   Common Questions of Law or Fact

    There are numerous questions of law and fact common to each class member. The allegations here turn on the legal questions of whether Chembio's alleged omissions and/or misstatements to the public and in its offering materials were material (with respect to both the Securities Act and Exchange Act claims), the knowledge or recklessness of Chembio in making these statements (with respect to the Exchange Act claims), and the impact of these statements on Chembio's stock price. Pls.' Mem. in Supp. Mot. for Prelim. Approval of Settlement ("Mem.") 19–20, ECF No. 117-1; Op. & Order 15, 24–25 (discussing elements of the Securities Act and Exchange Act claims). "Commonality requires the plaintiff to demonstrate that the class members

5

'have suffered the same injury,'" meaning that the class members' "claims must depend on a common contention . . . [which] must be of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The "common contention[s]" in this case are numerous—most significantly with respect to the materiality of Chembio's alleged misstatements and omissions—and their resolution would help resolve the action with respect to each class member.

    c.   Typicality

Lead plaintiffs' claims are typical of the other members of the class because they share the same factual and legal background; the Funds purchased 125,000 shares in the May 2020 offering at the offering price of $11.75 per share and MERS purchased Chembio common stock during the Class Period. *See* Am. Compl. ¶¶ 34–35.

    d.   Adequacy of Representation

Lead plaintiffs are adequate class representatives. Like all other class members, lead plaintiffs either purchased stock in the May 2020 offering or at market prices during the Class Period and were allegedly injured by the same misrepresentations and omissions as other class members. Further, counsel in this case is qualified and experienced and I find they have ably conducted the litigation through two rounds of briefing. *See* Consolidation Order 9, 11 (discussing class counsel's qualifications). I have no concerns with class counsel's ability to continue to adequately represent the class.

    2.   *Rule 23(b)(3)'s Requirements Are Met*
    a.   Common Questions Predominate

The elements of both the Securities Act and Exchange Act causes of action focus primarily on the conduct of defendants. As noted above, the common questions of fact here involve the defendants' knowledge, whether their statements were materially misleading or omitted necessary

information required to make the statements not misleading in context, and the impact of these statements and their correction on Chembio's share price. Although each Class Member will have suffered separate damages, the fact that the individual damages will differ does not create an individual question that predominates over common questions. *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 313 (S.D.N.Y. 2016) ("Issues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b) cases."); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 99 (S.D.N.Y. 2015) (noting that common questions will predominate where a litigant's "theory of liability matches their theory of damages"); *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 241–42 (S.D.N.Y. 2012) (finding predominance where the materiality element was based on an objective basis and noting that "[i]ssues regarding individualized damages calculations generally . . . are not sufficient to defeat class certification" (internal quotation and citation omitted)).

   b.  A Class Action is Superior to Other Methods of Adjudication

   Rule 23(b)(3) also requires that I determine "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," including "class members' interests in individually controlling the prosecution or defense of separate actions[,] . . . any litigation concerning the controversy already begun by or against class members," the "desirability" of litigating these claims in this forum, and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). Each factor militates in favor of a class action as opposed to individual actions. Any attempt to handle this action via individual actions by class members against defendants would likely result in significant duplication of class member and judicial resources and would create the possibility of inconsistent judgments. Further, the putative class actions filed in the Eastern District of New York have already been consolidated into this action, I am not aware of any other pending action. This forum is appropriate because Chembio is

headquartered in Hauppauge, New York, which is within the Eastern District of New York. Finally, I see no potential difficulties managing this settlement class action.

3. Conclusion

In light of the foregoing, I certify the class as proposed by the plaintiffs.

B. *The Class Notice Is Appropriate*

For a class action certified pursuant to Rule 23(b)(3), the notice directed to class members must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain certain information described in Rule 23(c)(2)(B)(i)–(vii) and must also comply with the requirements of the Private Securities Litigation Reform Act.[2] *See* 15 U.S.C. § 78u–4(a)(7)(A)–(F). I find that the proposed notice is adequate and contains all information required under the PSLRA and the Federal Rules.

"Notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007). The plaintiffs have filed their proposed notice and proof of claim forms on the docket. *See* Stipulation, Ex. A-1 ("Notice"), ECF No. 117-2. Plaintiffs have also addressed the manner of notice in their proposed order for settlement approval and the issuance of notice. *See* Stipulation & Agreement of Settlement, Ex. A ("Proposed Order"), ECF No. 117-2.

---

[2] Defendants were also required to serve a notice of proposed settlement to federal and state officials pursuant to 28 U.S.C. § 1715 within ten days of the filing of the proposed settlement. Defendants have filed a declaration stating that this notice was made within the required time frame. *See* Declaration of Stephanie Fiereck, ECF No. 119.

The Notice will be distributed in three ways. First, a claims administrator will mail the notice and proof of claim forms to all class members whom it can identify with reasonable effort, including mailing all class members identified by Chembio's transfer agent and brokers and other nominees who purchased Chembio stock on behalf of others. Proposed Order ¶¶ 10–11. Second, the claims administrator will publish a summary notice in the national edition of *The Wall Street Journal* and via a national newswire service. *Id.* ¶ 10(b). Finally, the claims administrator will maintain a settlement website where class members may access the Notice and other materials. *Id.* ¶ 10(a).

As plaintiffs note, this method of notice is frequently approved by courts. *See, e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184–85 (S.D.N.Y. 2012) (approving initial mailing of notice to "1,813 banks, brokerage companies, and institutional investors, which may have traded the common shares of IMAX in their clients' or their own accounts" after which these entities requested additional mailings to individuals, in addition to published summary notices and use of a settlement website). I agree that the method of notice proposed is sufficient to meet the requirement that it be the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), in light of the fact that stock is often purchased by individuals via an intermediary.

I also find that the Notice satisfies the requirements of Rule 23(c)(2)(i)–(vii). The Notice describes the nature of the action, Notice at 4–6, contains the class definition, *id.* at 6, identifies the claims, issues, and defenses, *id.* at 5–6, informs class members that they may enter an appearance through an attorney, *id.* at 11, describes the process for seeking exclusion from the class, *id.* at 10–11, and explains that the judgment will bind members who remain in the class, *id.* at 7–10, 12. The Notice also complies with the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(7)(A)–(F); Notice at 2–4.

*C.  The Settlement Is Likely to Receive My Final Approval*

Notice may only be issued "if giving notice is justified by the parties' showing that the court will likely be able to[] approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) in turn requires that I find that the settlement "is fair, reasonable, and adequate after considering" the following enumerated factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)  any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).

A settlement's fairness is determined "by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). Further, I may presume that a settlement is fair, adequate, and reasonable where "a class settlement [was] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (citing *Manual For Complex Litigation (Third)* § 30.42 (1995)). In this circuit, courts also review the settlement against the nine factors identified in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), many of which overlap with the requirements of Rule 23(e)(2). *See, e.g.*, *Calibuso v. Bank of America*

*Corp.*, 299 F.R.D. 359, 366–67 (E.D.N.Y. 2014) (discussing application of *Grinnell* and Rule 23(e)(2)). These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Grinnell*, 495 F.2d at 463 (internal citations omitted).

1. *Rule 23(e)(2) Factors*
a. The Class Was Adequately Represented by Counsel and the Representatives

I find that class counsel and the class representatives have adequately litigated this case on behalf of the class. Class counsel have substantial experience in complex securities class actions, *see* Mem. 9–10 (collecting cases), and capably litigated both the motion to dismiss and motion for reconsideration. Class counsel has also represented that they undertook an extensive investigation of the claims and defenses, consulted with a damages expert, and engaged in spirited mediation with the defendants, resulting in the settlement of this action. For these reasons, I believe it is likely that I will find that the class was adequately represented.

b. The Settlement Was Negotiated at Arm's Length

The parties engaged in two rounds of mediation with an experienced mediator, resulting in this settlement. The "presumption of fairness, adequacy, and reasonableness" attaches following "arm's-length negotiations between experienced, capable counsel *after meaningful discovery*." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (emphasis added). Although discovery never took place in this action because the parties settled soon after I denied plaintiffs' motion to reconsider, I find that the lack of discovery is mitigated by the procedural posture and surviving claims in the case. As I discussed in my opinion on the defendants' motion to dismiss, Securities Act claims have a

11

relatively low standard of scienter and rely primarily on the materiality of the misstatements made. Op. & Order 24–25 (discussing the "virtually absolute liability" faced by issuers and negligence standard for underwriters for claims under Sections 11 and 12 of the Securities Act). Discovery would not likely have revealed much further information that would bear on the value of the Securities Act claims, and those claims would have to be fully litigated prior to appeal of my dismissal of the Exchange Act claims. Because the parties reached this settlement after an arm's-length negotiation between competent counsel and with the assistance of a third-party mediator, it is likely that I will find this factor met.

c.   The Relief Provided for the Class is Adequate, Although Some Questions Remain

The total relief afforded the class by this settlement is $8.1 million. On a per-share basis, the settlement amounts to approximately $0.65 per share before deducting plaintiffs' counsel's requested attorneys' fees and costs. Notice at 2. Plaintiffs' counsel anticipates moving for a fee award to be paid from the settlement amount of 27.5% and costs not to exceed $50,000. After fees and costs, the per-share recovery would be approximately $0.47. *Id.* at 3.

Plaintiffs aver that this recovery is approximately 14% of their "maximum estimated recoverable damages" of $58.4 million for the combined Securities Act and Exchange Act claims. Mem. 16. Plaintiffs do not describe how they calculated this maximum figure, although presumably they derived this figure from their "extensive[]" consultations with a damages expert. Mem. 14.

Finally, the plan of distribution for the settlement will distribute approximately 37.16% of recovery to claims under the Exchange Act and the remaining 62.84% to claims under the Securities Act. Plaintiffs have not explained in their submissions how the proportion was calculated.

The amounts recoverable by Securities Act claimants are calculated as either (i) the May 2020 offering price of $11.75 less the price at which shares were sold, if sold prior to the filing of this action; or (ii) the lesser of $11.75 less the sales price or $11.75 minus $5.30 (the closing Chembio share price as of the date this action was filed), for shares sold or retained after this action was filed. *See* Notice at 15. The amounts recoverable by Exchange Act claimants is either (i) nothing, if shares were sold prior to the revocation of the EUA and Chembio's public announcement on June 17, 2020; (ii) for shares sold after the revocation of the EUA and during the PSLRA's 90-day "look-back" period, which ended on September 14, 2020, *see* 15 U.S.C. § 78u-4(e)(1), the lesser of (a) the inflated value of the share at the time of purchase; (b) the difference between the purchase price and the selling price; and (c) the difference between the purchase price and the average closing price up to the date of sale as described in the plan of allocation; or (iii) if retained or sold after September 14, 2020, the lesser of (a) the inflated value of the share at the time of purchase; (b) the difference between the purchase price and the selling price; and (c) the difference between the purchase price and $4.57, the 90-day average price during the look-back period. Notice at 14, 16–18.

In evaluating the adequacy of the settlement, I agree with plaintiffs' statement that "[s]ecurities class actions are notoriously complex and present numerous hurdles to proving liability and damages." Mem. 11. I am also mindful of the fact that defendants continue to dispute plaintiffs' allegations and of the high costs of a drawn-out, hard-fought litigation. Further, although I dismissed the Exchange Act claims with prejudice, plaintiffs continue to assert that these claims have merit and this settlement accounts for the possibility that the Exchange Act claims would be revived on appeal. The appeal would occur only after the resolution of the Securities Act claims on dispositive motion or at trial and any discovery necessary to the Exchange Act claims would

no doubt cause further delay. In short, the settlement offers benefits in the form of a quick cash payment to class members upon entry of a judgment, rather than an uncertain payout in the future.

I am also obliged to consider the propriety of the attorneys' fees to be sought by plaintiffs' counsel, as well as the timing of payment. Lead plaintiffs also intend to seek awards not to exceed $4,000 for their representation of the class. Lead counsel intends to move for a fee award constituting 27.5% of the settlement amount of $8.1 million and no more than $50,000 in costs. The percentage share of attorneys' fees is in line with fee awards frequently approved in class actions in this circuit. *See, e.g.*, *Jenkins v. Nat'l Grid USA Serv. Co., Inc.*, No. 15-CV-1219 (JS), 2022 WL 2301668, at *3–4 (E.D.N.Y. June 24, 2022) (granting fee award of $12.7 million on total settlement of $38.5 million, or approximately 30% of the total settlement amount); *In re Teva Sec. Litig.*, No. 17-CV-558 (SRU), 2022 WL 16702791, at *1 (D. Conn. June 2, 2022) (granting fees in the amount of 23.7% of the settlement fund of $420 million, plus $9.7 million in expenses); *In re Perrigo Co. PLC Sec. Litig.*, No. 19-CV-70 (DLC), 2022 WL 500913, at *1–2 (S.D.N.Y. Feb. 18, 2022) (granting fees in the amount of 33 and 1/3% of the settlement fund of $31.9 million). Further, the Stipulation explicitly provides that fees and expenses will be paid only after the judgment and an order authorizing the fees and expenses are executed. Stipulation ¶ 7.2.

I must consider whether there is "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), which requires the parties to "file a statement identifying any agreement made in connection with the proposal," Fed. R. Civ. P. 23(e)(3). According to plaintiffs, "[t]he parties have entered into a standard supplemental agreement which provides Chembio with the option to terminate the [s]ettlement if [c]lass [m]embers with a certain amount of purchases of Chembio common stock request exclusion from the [c]lass." Mem. 13. However, no detail as to the amount of purchases required to allow Chembio to terminate the settlement has

14

been provided. Without further information, I cannot consider the impact of this separate agreement, if any, on my final approval of the settlement.

    d.   Questions Remain Concerning the Relative Treatment of Class Members

        Finally, I must consider whether the proposal treats class members equitably relative to each other. The plan of allocation offers 37.16% of the settlement amount (net of fees and costs) to Exchange Act claimants and the remainder to Securities Act claimants. Although plaintiffs have not explained how this distribution was determined, presumably it results from a combination of at least three factors: (1) the fact that the Exchange Act claims were dismissed with prejudice and recovery of damages for these claims via further litigation would be contingent on a successful appeal; (2) as I have noted, Exchange Act claims require more burdensome proof of scienter than the Securities Act claims and would be less likely to result in recovery as compared to the Securities Act claims; and (3) the Exchange Act claims apply to a wider range of shareholders than the Securities Act claims, which are limited to the 2.6 million shares purchased in or traceable to the May 2020 offering. However, without additional background on the basis for the proposed treatment of class members relative to each other, I will not be able to make a final determination of the equitable treatment of class members relative to each other.

    e.   Conclusion

        I believe I am likely to find that the requirements of Rule 23(e)(2) are met, but as I have noted there are items for which I require more clarification before granting final approval to the settlement. These items must be addressed on plaintiffs' anticipated motion for final approval of the settlement.

        *First*, plaintiffs must explain how they concluded that their maximum reasonable recovery was $58.4 million, including by reference to the evaluation conducted by their damages expert, if that evaluation is the source of the maximum recovery.

*Second*, plaintiffs must provide further detail on the agreement that would entitle Chembio to terminate the settlement, including by identifying the percentage of shares outstanding that must opt out of the settlement in order for Chembio to withdraw from the settlement agreement.

*Third*, plaintiffs must robustly explain the justification for the proposed plan of allocation between Exchange Act and Securities Act claimants, with specific reference to how the division of the fund between these claimants was calculated.

### 2. The Remaining Grinnell Factors Favor Approval
### a. The Stage of the Proceedings

Although no discovery has occurred in this action, I have already discussed that the surviving Securities Act claims would require relatively little discovery, while the resuscitation of the Exchange Act claims would require full litigation of the Securities Act claims, followed by an appeal, then followed by Exchange Act discovery. The parties have already engaged in two rounds of briefing concerning the motion to dismiss, engaged in two rounds of mediation, and plaintiffs represent that the complaint was based on an extensive investigation. This factor supports approval.

### b. The Risks of Maintaining the Class Action Through Trial

Notably, because of the settlement posture of this case, defendants do not oppose class certification. The plaintiffs argue that in addition to the motion practice that would accompany class certification if this action were not settled, defendants could also later move to decertify the class or to shorten the class period. Mem. 15 (citing Fed. R. Civ. P. 23(c) (authorizing alteration or amendment of the class certification order at any time "before final judgment")).

### c. Chembio Has Limited Ability to Withstand a Larger Judgment

Plaintiffs suggest that there is "substantial doubt that Chembio [can] withst[and] a judgment above the [s]ettlement [a]mount" of $8.1 million. Mem. 15. I take judicial notice of the

fact that as of September 30, 2022, Chembio had cash and cash equivalents on hand of approximately $21.1 million and total equity of $17.8 million. *See* Chembio Diagnostics, Inc., Quarterly Report (Form 10-Q) at 4 (Nov. 3, 2022), https://chembiodiagnosticsinc.gcs-web.com/static-files/52331cfc-b66f-47ad-9f66-9f36f8d41af8. Although Chembio is not paying the full amount of the $8.1 million settlement, even a payment of half the settlement amount would consume approximately 20% and 25% of Chembio's cash and equity balances, respectively.

d.   Conclusion

I would likely find that the remaining *Grinnell* factors are met, once I receive the additional information bearing on the adequacy of the recovery, discussed *supra*. Additionally, following the issuance of the notice, I will be able to evaluate the second *Grinnell* factor, which requires examining the reaction of the class.

**CONCLUSION**

The settlement approval hearing is hereby scheduled for Monday, June 5, 2023, at 11 a.m. to be held in Courtroom 8C South at the United States Courthouse located at 225 Cadman Plaza East, Brooklyn, NY 11201. Plaintiffs are directed to provide further detail on the three topics I identified in their anticipated motion for final approval of the settlement.

The plaintiffs' proposed schedule of settlement events, Mem. 21, is approved with the modification that lead plaintiffs' anticipated motion for final approval of the settlement, application for attorneys' fees, and application for an award to the lead plaintiffs shall be due 42 calendar days before the hearing, on or before April 24, 2023, so that class members who wish to opt out or object have 21 days to consider the additional information I have ordered the lead plaintiffs to include in their motion. I approve all other proposed deadlines.

A signed version of the proposed order granting preliminary approval to the settlement is attached to this opinion, with minor alterations as discussed in this opinion.

SO ORDERED.

Dated:       February 3, 2023                                _____/s/_____
               Brooklyn, NY                                  Allyne R. Ross
                                             United States District Judge